IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

LANA RUDOLPHI

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO, a Colorado Nonprofit Corporation d/b/a Mercy Regional Medical Center, and

CENTURA HEALTH CORPORATION, a Colorado Nonprofit Corporation, d/b/a Centura Health-Mercy Regional Medical Center of Durango,

    Defendants.

## COMPLAINT AND JURY DEMAND

Now comes the Plaintiff, Lana Rudolphi, ("Plaintiff" or "Ms. Rudolphi") by and through undersigned counsel, and for her Complaint against Defendants states as follows:

### I. NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), to provide appropriate relief to Plaintiff, who was discharged by Defendants because of her pregnancy. As alleged in greater detail below, Ms. Rudolphi was hired by MRMC as a Computed Tomography Technologist (CT Tech) by Defendants on or about July 16, 2017 and performed her duties in a satisfactory manner. Defendants terminated Ms. Rudolphi for following the guidelines that Defendants set out for her related to treating COVID-positive or COVID-pending patients as a high-risk pregnant woman.

## II.     JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the federal counts in this Complaint pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345 because they arise under the laws of the United States.

2. This Court has supplemental jurisdiction over the remaining counts.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because Plaintiff was employed and terminated in this District and the Defendants conduct business in this District at their location in Durango, La Plata County, Colorado.

## III. PARTIES

4. Plaintiff Lana Rudolphi (formerly known as Lana Lemke) is an adult woman who was employed as a Computed Tomography Technologist (CT Tech) by Defendants from on or about July 16, 2017 until on or about July 30, 2020 and is a citizen of the State of Colorado.

5. Defendants Catholic Health Initiatives Colorado d/b/a Mercy Regional Medical Center, and Centura Health Corporation d/b/a Centura Health-Mercy Regional Medical Center of Durango (hereinafter the "Defendants" or "MRMC") are Colorado Nonprofit Corporations whose principal place of business is 9100 E. Mineral CR, Centennial, Colorado 80112.  Defendants operate a hospital where they employed Plaintiff in La Plata County, Colorado at 1010 Three Springs Blvd., Durango, Colorado 81301.

6. Plaintiff is a covered and eligible employee and the Defendants are covered as an employer as defined by defined by Title VII of the 1964 Civil Rights Act (Title VII, 42 U.S.C. §§ 2000e, *et seq.*), and the Colorado Anti-Discrimination Act (CADA, C.R.S. §§ 24-34-401, *et seq.* including the Pregnant Workers Fairness Act C.R.S. §§ 24-34-402 *et seq.*).

### III.   ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Ms. Rudolphi filed a charge with the Colorado Civil Rights Division (CCRD), which was dually filed with the EEOC, alleging violations of Title VII and CADA by Defendants.

8. The CCRD provided Defendants with notice of the charges of discrimination.

9. The CCRD investigated the charges of discrimination.

10. Because more than 180 days passed since the charge was filed and because Plaintiff requested her right to sue letter, her charge was dismissed by the agencies without issuing a determination. The CCRD issued a notice of right to sue on August 4, 2021. The EEOC issued a notice of right to sue on October 4, 2021.

11. All administrative remedies and conditions precedent to the institution of this lawsuit have been exhausted and fulfilled.

### IV.  STATEMENT OF FACTS

12. On or about July 16, 2017, Defendants hired Ms. Rudolphi as a CT Tech at MRMC.

13. Plaintiff performed her job duties satisfactorily at all times.

14. On or about January 31, 2020 Plaintiff learned that she was pregnant.

15. On or about March 9, 2020 Plaintiff disclosed her pregnancy to Keri McCune, Defendants' Infection Prevention Program Manager ("McCune") and Shawn Putman, Imaging Department Director ("Putman"). At that same time McCune told Plaintiff she was exempt from direct patient care with COVID-19 or suspected COVID-19 patients due to her pregnancy status and weakened immune system that occurs during pregnancy. Plaintiff immediately requested a reasonable accommodation from her supervisor, Ginny Craig ("Craig"), not to work directly with patients that had, or were believed to have, COVID-19.

16. MRMC approved Plaintiff's request for reasonable accommodations by agreeing to implement protocols so that Plaintiff could avoid direct contact with COVID-19-positive or COVID-19-pending patients during her pregnancy.

17. At the end of Plaintiff's shift, on or about March 9, 2020, Craig spoke with Plaintiff about the protocols MRMC was considering for Sundays when Plaintiff worked 12-hour shifts alone and during her shifts on Mondays when she had coworkers present.

18. On or about Sunday, March 15, 2020 Craig confirmed the protocols in person with Plaintiff.

19. MRMC accommodated Plaintiff by implementing the following protocols for Plaintiff during her pregnancy:  When Plaintiff received a CT order on a patient who had or was believed to have COVID-19:

  a. on Sundays, she was to bring in the on-call MRI Tech to assist her with the direct contact with those patients; and

  b. on Mondays, her coworkers on staff would handle the direct contact with those patients.

20. Pursuant to these accommodations, Plaintiff would always remain outside of the scan room while a coworker or MRI Tech would get or receive the patient, transfer the patient onto the table, flush the IV, connect them to the power injector, and position the patient.  The Tech would then leave the scan room while Plaintiff took the scan and entered the necessary data into the computer. After the scan was complete the assisting Tech would re-enter the scan room to remove the patient from the machine, disconnect the patient, and transfer the patient.  Plaintiff would conduct all her work in the tech area, which is separate from the scan room.  Plaintiff was never required to come

into direct contact with COVID-19-positive or COVID-19-pending patients or provide them with direct care.

21. As a result of these accommodations, from March 9, 2020 until she was terminated, Plaintiff did not have any intentional direct contact with any COVID-19-positive (or potentially positive) patients while performing her job at the workplace.

22. Shortly after Plaintiff spoke with McCune and Putman on March 9, 2020 to disclose her pregnancy she then spoke with her coworker, Maggie Chevallier, who became visibly upset that she would be doing the direct care for COVID-19 patients when she worked with Plaintiff and exclaimed, "you're pregnant again!?"

23. Upon information and belief, after lunch Chevallier left the tech area and went to speak with Craig to complain about MRMC's accommodations of Plaintiff's pregnancy. When she returned she was still visibly upset.

24. On or about June 19, 2020, Defendants' CEO sent an email to all MRMC staff informing them that all frontline workers "directly involved in COVID-19 patient care delivery and contact" would receive an appreciation bonus of 12.5% of their base salary for hours worked between March 8 – May 30, 2020.

25. On or about July 10, 2020, Putman sent an email to the Imaging Department stating that no one in that department would receive the appreciation bonus, that "only select departments would receive the appreciation bonus."

26. On or about July 12, 2020, Plaintiff's common law husband, Aaron Rudolphi ("Mr. Rudolphi"), who also was an employee in MRMC's Imaging Department as a Radiologic Technologist, expressed concerns to Putman regarding the exclusion of Imaging Department employees from the definition of frontline healthcare workers, thus denying them the bonus.

27. Mr. Rudolphi also expressed to Putman that MRMC's procedures had placed him, Plaintiff, and their unborn child at risk of being exposed to COVID-19. In protest of the decision to not include the Imaging Department as frontline workers, Mr. Rudolphi stopped assisting COVID-19-positive or COVID-19-pending patients.

28. On or about July 12, 2020, Craig pointed in Mr. Rudolphi's face and threatened, "You and your family better be careful. Watch out Aaron."

29. On or about July 13, 2020, Putman sent an email further explaining why the Imaging Department did not receive the appreciation bonus.

30. On or about July 16, 2020 Putman, an HR Employee (name unknown) and Clatterbuck, via speakerphone, placed Mr. Rudolphi on administrative leave pending investigation for refusing to help patients that had or were believed to have COVID-19 and threatened his professional ARRT (American Registry of Radiologic Technologists) license.

31. Shortly after the meeting on July 16th Mr. Rudolphi voluntarily resigned his position at the MRMC Imaging Department.

32. Plaintiff did not have opportunity to review the emails regarding the appreciation bonus until she returned to work for her next shift because she only had access to her emails at work.

33. Upon returning to work for her next scheduled shift on or about July 12, 2020 Plaintiff read all of the email communications related to the Imaging Department's exclusion from receiving the bonus.

34. The emails dealt with MRMC's argument that the Imaging Department was not involved in the direct care or contact with COVID-19-positive or COVID-19-pending patients.

35. These communications primarily consisted of the Imaging Department staff arguing that they were regularly in direct contact with COVID-19-positive or COVID-19-pending patients, and Putman's responses arguing that they were not included in that definition for purposes of the bonus.

36. Due to her accommodations, Plaintiff was not required to have direct contact with COVID-19-positive or COVID-19-pending patients.  But she was required to call-in other Imaging Department staff to handle the direct contact for COVID-19 patients.  Based on the email communications about Imaging Department staff's exclusion from the definition of front-line direct care providers, Plaintiff was unsure of whether her accommodation protocols had changed and if she was now supposed to find a frontline worker outside of the Imaging Department to perform the direct patient contact with COVID-19-positive or COVID-19-pending patients.

37. As such, on or about July 12, 2020 Plaintiff sent a text message to Putman requesting a direct care provider to be provided to assist her in the scans to do the direct care necessary to get the exams done.

38. On this same day Plaintiff also spoke with Denise Hawkins, a manager in the Imaging Department, and asked her the same questions that she asked Putman to ensure that none of her protocols had changed based on the communications related to the bonus.

39.  On or about July 12, 2020, Putman and Hawkins each confirmed in person to Plaintiff that her accommodations had not changed.

40. On or about Friday July 17, 2020, Vanessa Hamer ("Hamer"), the Operations Director, called Ms. Rudolphi and told her that if she received a COVID-19-positive or COVID-19-pending patient when working her next shift by herself on July 19, 2020 that she was to call the MRI Tech for direct patient care assistance of any COVID-19 patients.

41. Hamer also told Plaintiff to report to a meeting in Putman's office on July 20, 2020 before her shift started.

42. Plaintiff worked her full 12-hour shift on Sunday, July 19, 2020 by herself. She had one COVID-19 patient, and as she was instructed to do, she called the MRI Tech to assist with direct care.

43. On or about July 20, 2020, Plaintiff reported for the meeting with Putman. Clatterbuck was on speakerphone. Putman and Clatterbuck abruptly suspended Plaintiff based on their false assertion that Plaintiff was refusing to assist patients that were suspected of having COVID-19.

44. At all relevant times, Plaintiff followed MRMC's protocols to accommodate her pregnancy during the pandemic.

45. Plaintiff never refused to treat a patient nor delay patient care.

46. On July 24, 2020 Plaintiff and Mr. Rudolphi formalized their common law marriage and were formally married. Plaintiff's coworkers, managers, and supervisors were aware that she was common law married, that she planned to formally marry Mr. Rudolphi, and that they were expecting their second child together.

47. On or about July 30, 2020, MRMC terminated Plaintiff's employment for the same false accusations that she was accused of when she was suspended.

48. There were other MRMC employees who were not pregnant or who were not planning to marry a coworker who expressly refused to treat COVID-19-positive or COVID-19-pending patients in response to Defendants' decision not to provide certain departments an appreciation bonus who were not terminated.

49. Plaintiff was discriminated against based on her protected classes and/or in retaliation for engaging in protected activity.

50. Plaintiff was terminated because she was pregnant, because she requested reasonable accommodations related to her pregnancy, and because she was common law married to and planned to formally marry her coworker.

51. Plaintiff suffers, and will continue to suffer, injury from the Defendants' illegal employment practices.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Discrimination because of Pregnancy in violation of the Pregnancy Discrimination Act – 42 U.S.C. §§ 2000e-k, *et seq.*)**

52. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

53. Plaintiff was pregnant when she was terminated.

54. Plaintiff was fully qualified for her position.

55. Defendants at all relevant times, knew that Plaintiff was pregnant and receiving accommodations.

56. Defendants treated Plaintiff less favorably than similarly situated non-pregnant employees and terminated her employment on account of her pregnancy and protected activity.

57. Defendants' conduct was intentional, willful, wanton, and malicious.

58. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to the Title VII of the Civil Rights Act of 1964.

59. Because of Defendants' unlawful conduct, Plaintiff is entitled to judgment in her favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**(Discrimination because of Pregnancy in violation of the Pregnant Workers Fairness Act – C.R.S. §§ 24-34-401, *et seq.*)**

60. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

61. Plaintiff was pregnant when she was terminated.

62. Plaintiff was fully qualified for her position.

63. Defendants at all relevant times, knew that Plaintiff was pregnant and receiving accommodations.

64. Defendants treated Plaintiff less favorably than similarly situated non-pregnant employees and terminated her employment on account of her pregnancy and protected activity.

65. Defendants' conduct was intentional, willful, wanton, and malicious.

66. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to the Colorado Anti-Discrimination Act.

67. Because of Defendants' unlawful conduct, Plaintiff is entitled to judgment in her favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**(Retaliation in violation of the Pregnancy Discrimination Act – 42 U.S.C. §§ 2000e-k, *et seq.*)**

68. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

69. Plaintiff engaged in protected activity by requesting reasonable accommodations related to her pregnancy.

70. Defendants disciplined and then terminated Plaintiff's employment shortly after Plaintiff engaged in protected activity of requesting and clarifying her accommodations.

71. Plaintiff suffered adverse employment actions because of her requested accommodations.

72. Defendants' conduct was intentional, willful, wanton, and malicious.

73. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to Title VII of the 1964 Civil Rights Act.

## FOURTH CAUSE OF ACTION
**(Retaliation in violation of the Pregnant Workers Fairness Act – C.R.S. §§ 24-34-401, *et seq.*)**

74. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

75. Plaintiff engaged in protected activity by requesting reasonable accommodations related to her pregnancy.

76. Defendants disciplined and then terminated Plaintiff's employment shortly after Plaintiff engaged in protected activity of requesting and clarifying her accommodations.

77. Plaintiff suffered adverse employment actions because of her requested accommodations.

78. Defendants' conduct was intentional, willful, wanton, and malicious.

79. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to the Colorado Anti-Discrimination Act.

## FIFTH CAUSE OF ACTION
**(Discrimination because of marriage to a coworker in violation of the Colorado Anti-Discrimination Act – C.R.S. §§ 24-34-401, *et seq.*)**

80. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

81. Weeks before Plaintiff was set to marry her coworker and common law husband, Mr. Rudolphi, Mr. Rudolphi voluntarily resigned over an internal dispute related to his protesting of workplace conditions and pay.

82. Plaintiff was suspended 4 days before and terminated 6 days after she formally married Mr. Rudolphi.

83. Plaintiff was fully qualified for her position.

84. Defendants at all relevant times, knew that Plaintiff was planning to marry her coworker.

85. Defendants treated Plaintiff less favorably than similarly situated employees who were not planning to marry or married to a coworker, and terminated her employment on account of her marriage.

86. Defendants' stated reason for terminating Plaintiff was conduct that her husband engaged in, not Plaintiff's conduct.

87. Defendants' conduct was intentional, willful, wanton, and malicious.

88. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to the Colorado Anti-Discrimination Act.

89. Because of Defendants' unlawful conduct, Plaintiff is entitled to judgment in her favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants and prays for:

A. Compensation for the loss of all the income, benefits, and privileges incurred from on or about July 30, 2020 through the date of reinstatement or trial, as well as reasonable front pay, which amount cannot yet be ascertained;

B. Other compensatory damages, including but not limited to compensation for damage to Plaintiff's reputation, emotional distress suffered because of Defendants' unlawful conduct, and all other noneconomic damages Plaintiff so incurred;

C. Prejudgment interest and post-judgment interest;

D. Punitive damages;

E.  Reasonable attorney fees incurred in this action, pursuant to federal and state law;

F.  The costs of this action; and,

G.  Any further relief provided by statute or law and that the Court deems just or equitable.

## VII.   JURY TRIAL DEMAND

Plaintiff requests a trial by jury.


Dated this 29th day of October 2021.

                                              By:   s/ David T. Albrechta
                                                      ***David T. Albrechta, esq***
                                                       ***Eleni K. Albrechta, esq.***
                                                       ALBRECHTA & ALBRECHTA, LLC
                                                     530 Main Avenue, Suite D3
                                                     Durango, Colorado 81301
                                                     Telephone: (970) 422-3288
                                                     E-mail: david@albrechtalaw.com
                                                                         eleni@albrechtalaw.com

                                                     *Attorneys for Plaintiff Lana Rudolphi*